# In the United States Court of Federal Claims

No. 15-637C
(Filed: October 18, 2017)
FOR PUBLICATION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| **ST. BERNARD PARISH GOVERNMENT,** | * Motion to Dismiss; RCFC 12(b)(1); <br> * Emergency Watershed Protection Program <br> * 7 C.F.R §§ 624.1-624.11; Federal Grant |
| Plaintiff, <br> v. | * and Cooperative Agreement Act 31 U.S.C. <br> * §§ 6301 *et seq.*; *Anchorage v. United* <br> * *States,* 119 Fed. Cl. 709 (2015); *Rick's* <br> * *Mushroom v. United States,* 521 F.3d 1338 |
| **THE UNITED STATES,** | * (Fed. Cir. 2008); Hurricane Katrina; <br> * Consideration; Cooperative Agreement; <br> * Direct Benefit; Subject Matter Jurisdiction |
| Defendant. | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*William M. McGoey*, St. Bernard Parish District Attorney's Office, Civil Division, Chalmette, LA, for Plaintiff.

*Reta E. Bezak*, Trial Attorney, *Chad A. Readler*, Acting Assistant Attorney General, *Robert E Kirschman, Jr.*, Director, *Kenneth M. Dintzer*, Deputy Director, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, for Defendant.

## OPINION AND ORDER

**DAMICH, Senior Judge.**

On June 30, 2017, the United States (the "Government"), acting through the Natural Resources Conservation Service ("NRCS"), filed a motion to dismiss or, in the alternative, for summary judgment. On the same day, St. Bernard Parish ("the Parish") filed a motion for partial summary judgment. In its complaint and motion, the Parish alleges that the Government breached an agreement with the Parish by not paying it all the money it was due for the removal of sediment in the Bayou Terre Aux Beoufs in the aftermath of Hurricane Katrina. The Government moves to dismiss this action for lack of jurisdiction because the agreement at issue is not a contract but rather a "Cooperative Agreement" or because the agreement lacked consideration on the part of the Government. Both motions are fully briefed and the matter is ripe for review.

For the reasons discussed below, the Court **GRANTS** the Government's motion to dismiss.

1

I.     **Statement of Facts**

   a. **The Cooperative Agreement**

On April 17, 2009, NRCS and the Parish entered into a "Cooperative Agreement Locally Led Contracting," Agreement Number 68-7217-09-0014. *See generally* A1-A18.[1] This agreement provided that under the provisions of the Emergency Watershed Protection ("EWP") Program the "NRCS is authorized to assist the Sponsor in relieving hazards created by natural disasters that cause sudden impairment in a watershed" and stated that the parties "agree to install emergency watershed protection measures to relieve hazards and damages created by Hurricane Katrina." A1.

The EWP Program authorizes the Secretary of Agriculture "to undertake such emergency measures for run-off retardation and soil-erosion prevention as may be needed to safeguard lives and property from floods . . . or any other natural element or force has caused a sudden impairment of that watershed." 33 U.S.C. § 701b-1. The Secretary has since delegated his authority to the NRCS. 7 C.F.R. § 624.1. The EWP Program provides, "technical and financial assistance . . . to a qualified sponsor . . . when a Federal emergency is declared by the President or when a local emergency is declared by the NRCS State Conservationist." 7 C.F.R. § 624.3. A qualified sponsor within the Program is "a State government or a State agency or a legal subdivision thereof, local unit of government, or any Native American tribe or tribal organization . . . ." 7 C.F.R. 624.4(g).

Under the agreement, removal work would be performed in sixteen watershed areas, among them the Bayou Terre Aux Beoufs, which is the subject of this lawsuit.[2] A1. The Cooperative Agreement also stated that the parties agreed that the "described work is to be constructed at an estimated cost not to exceed $4,318,509.05" for the sixteen watersheds. A1. The estimated cost to remove the debris in the Bayou Terre Aux Beoufs watershed was $3,562,180.00. A1.

The Cooperative Agreement provided that the Parish was obligated, *inter alia*, to contract for the watershed improvements, pay the contractors, and take responsible measures necessary to dispose of any and all contractual disputes, claims, and litigation resulting from the projects listed in the cooperative agreement. A2-4.

The NRCS agreed to "provide 100 percent ($4,318,509.05) of the *actual* costs of the emergency watershed protection measures." A4 (emphasis in original). Actual costs consist of "contracts awarded to contractors" and the Parish must, in order to receive reimbursement, "provide records to support costs incurred." A2. Upon receipt of Form SF-270 and required receipts, the NRCS would then pay the Parish. A5. The NRCS also

---

[1] "A_" refers to pages of the appendix attached to the Government's motion.
[2] The others include: Bayou La Loutre, River Bend Canal, South Lake Canal, Little River Bend Canal, Serpas Canal, River Queen Canal, Creely Canal, C. Hebert Canal, Pirate Canal, Jacob Canal, Jeanfreau Canal, Creedmore Canal, Mascot Ditch, Willie Smith Canal, and Reunion Canal.

agreed that it would "provide the prepared drawings, designs and specifications of the emergency watershed protection measures." A5.

### b. St. Bernard Parish Contracts With Omni.

In March 2010, the Parish and Omni Pinnacle, LLC ("Omni") entered into a contract in which Omni was to remove the sediment in the Bayou Terre Aux Beoufs. *See generally* A21-289. Under this contract, the Parish agreed to pay Omni $4,290,300.00 for the debris removal. A22. Although under the terms of the Cooperative Agreement, the NRCS would reimburse the Parish for the approved expenses incurred by the Parish for the watershed improvements made by Omni under the contract the NRCS was not a party to this contract. A22.

The contract between Omni and the Parish stated that the work to be performed by Omni would be paid on a stated price per cubic yard basis. The original Omni contract estimated that 119,580 cubic yards of sediment would be removed. A38. However, after Omni completed its pre-construction survey, the quantity of sediment was reduced by 59 percent, to only 49,888.69 cubic yards. A296.

Omni completed the Bayou Terre Aux Beoufs removal project in September 2010 and submitted an invoice to the Parish in the amount of $4,746,469.65. A292. In April 2011, this amount was reduced to $4,642,580.58. A309.

### c. The Final Contract Amount

On January 5, 2011, Vicki Supler, an NRCS Grants and Agreements Specialist and NRCS's designated liaison for the Cooperative Agreement, contacted All South Consulting Engineers ("All South"), a company that the Parish contracted to manage and inspect the Bayou Terre Aux Beoufs project. A346. Ms. Supler noted that "the contractor completed the final 'as-built' surveys which showed that 49,888.69 [cubic yards] of sediment had been excavated." A295. Ms. Supler then explained that consistent with the contract specifications, "the only quantity the NRCS will allow payment for is the 49,888.69 [cubic yards]." A295.

Since the final quantity of removed sediment represented a 59 percent decrease in the original estimate, the NRCS applied a 59 percent increase in the bid price per cubic yard. A296. After making this calculation, the NRCS determined that the "allowable costs the NRCS will make reimbursable to the parish for the works of improvement on this project" was $2,849,305.60. A296.

All South also reviewed Omni's invoice and noted certain concerns, especially with the legality of Omni and the Parish agreeing to continue with the project after discovering the quantity discrepancies (the 59 percent reduction in sediment removal), and how Omni's invoiced price included a markup of 10 percent for profit and 15 percent for overhead. A298. However, All South recommended payment to Omni in the amount of $1,758,548.94. A301. The Parish authorized the payment to Omni in that amount and

then sought reimbursement from NRCS. A303. On July 13, 2011, NRCS approved the reimbursement to the Parish and the payment was processed through the Department of Treasury.[3] A320.

On January 17, 2014, Omni and the Parish entered into a change order that adjusted the contract price to $3,243,996.37. A335. Subsequently, the Parish stated that under the change order and Louisiana law, it was obligated to pay the full amount of the revised contract. A344. Therefore, the Parish authorized payment of $1,463,447.43, which equaled the remaining balance owed to Omni minus $22,000.00 in liquidated damages.[4] A344, 347. On April 16, 2014, the Parish filed for reimbursement from NRCS for that amount. A344.

In May 2014, the NRCS asked the Parish for additional information. A360-70. Specifically, NRCS requested documentation of, *inter alia*, the revised unit prices, the claim that the actual time of the project did not change, the necessity of additional excavation, and calculations used to devise the new pricing. A360-61.

In August 2014, the Parish responded and maintained that it did not need to provide further documentation, because the requisite documents were already provided. A371. After reviewing the Parish receipts, on September 29, 2014, NRCS authorized payment to the Parish in the amount of $1,107,581.22, which reduced the claim by $355,898.52. A378. The Parish did not provide anything further to the NRCS and this suit followed.

## II. Standard of Review Under RCFC 12(b)(1) and RCFC 12(b)(6)

Subject matter jurisdiction is a threshold requirement that must be determined for a court to hear the case. RCFC 12(b)(1). *See also Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010). When considering a motion to dismiss, the Court considers the facts alleged in the complaint to be true. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F2d 746, 747 (Fed. Cir. 1988). However, the plaintiff bears the burden of establishing subject matter jurisdiction by preponderant evidence. *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002). If the court finds that at any time it lacks subject matter jurisdiction, it must dismiss the action. RCFC 12(h)(3). Also, if a plaintiff fails to state a claim upon which relief can be granted, under RCFC 12(b)(6), the complaint must be dismissed. *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002) (stating that a complaint must be dismissed "when the facts asserted by the claimant do not entitle him to a legal remedy.").

---

[3] As the payment was processed, a deduction of $284,111.77 was made to offset an unrelated debt owed by the Parish to the Environmental Protection Agency. A389.

[4] The project was finished 22 days after the deadline specified by the contract between Omni and the Parish. A345. The contract stated that every additional day would result in $1,000 in liquidated damages. A24.

### III.     Discussion

#### a.   The Cooperative Agreement Does Not Contemplate Money Damages.

Pursuant to the Tucker Act, the Court of Federal Claims possesses jurisdiction over express or implied contracts with the United States, 28 U.S.C. § 1491(a)(1), but the Tucker Act does not establish a substantive right enforceable against the United States for monetary damages. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) ("[t]he Tucker Act is 'only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages.'") (internal citations omitted). Therefore, the plaintiff must provide a separate source of law, which may come "from either a money-mandating constitutional provision, statute, or regulation, or an express or implied contract with the United States." *Anchorage v. United States*, 119 Fed. Cl. 709, 713 (2015). Stated another way, "when a breach of contract claim is brought in the Court of Federal Claims under the Tucker Act, the plaintiff comes armed with the presumption that money damages are available, so that normally no further inquiry is required." *Holmes v. United States*, 657 F.3d 1303, 1314 (Fed. Cir. 2011). However, this presumption may be rebutted. *Anchorage*, 119 Fed. Cl. at 713.

Here, the Parish is arguing that the agreement is an express contract with the NRCS and, therefore, money damages are implied in the agreement per *Holmes*. Pl.s' Resp. at 8-11. Consequently, under the motion to dismiss standard, this Court must presume that this express contract carries with it a presumption of money damages (and thus Tucker Act jurisdiction). The Government must show that the agreement somehow rebuts this presumption.

The Government contends that the agreement with the Parish should be considered a cooperative agreement under the Federal Grant and Cooperative Agreement Act ("FGCAA"). Def.'s Mot. to Dismiss at 17. The Government argues based on the precedent set forth in *Rick's Mushroom Serv. v. United States*, 76 Fed. Cl. 250 (2007), *aff'd*, 521 F.3d 1338 (Fed. Cir. 2008), cooperative agreements, unlike procurement contracts, are not presumed to provide money damages.

According to 31 U.S.C. § 6305, cooperative agreements are to be used when, "the principal purpose of the relationship is to transfer a thing of value to the . . . local government . . . to carry out a public purpose of support or stimulation . . . instead of acquiring (by purchase, lease, or barter) property or services for the direct benefit or use of the United States Government." The Government maintains that this description fits the current situation perfectly: that the "purpose of the Cooperative Agreement in this case was not for NRCS to purchase or lease anything from the Parish," but rather that, "the agreement stated that NRCS was 'authorized to assist the Parish' pursuant to the EWP program." Def. Mot. to Dismiss at 17 (citing A1). Namely, that the NRCS would provide financial and other assistance to the Parish to repair damage from Hurricane Katrina. Furthermore, the Government notes that the regulations of the EWP Program specifically provide that the administration of program assistance is to be handled through cooperative agreements. 7 C.F.R. § 624.2.

In this case, the Court is persuaded that the agreement at issue is considered a cooperative agreement and, therefore, the Parish lacks jurisdiction in this Court. The Cooperative Agreement provided that the Parish would pay the contractors as per its contract for the watershed improvements in accordance with the NRCS specifications and in return the Parish would be entitled to the "actual cost" reimbursement of the project subject to NRCS approval. This agreement does not "acquir[e] (by purchase, lease, or barter) property or services for the direct benefit or use of the United States Government." 31 U.S.C. § 6305. Since the Court construes the agreement between the NRCS and the Parish as a cooperative agreement, damages cannot be implied; therefore, the agreement is not money-mandating, unless the Parish can point to a specific provision mandating a monetary recovery.

This holding is consistent with *Anchorage v. United States*. First, unlike the contracts at issue in *Anchorage*, the agreement between the Government and the Parish is labeled "Cooperative Agreement." A1. Second, there is no claim here, as there was in *Anchorage*, that the agency did not follow its own specific process for entering into a cooperative agreement. *Anchorage*, 119 Fed. Cl. at 714. Third—and most important— the *Anchorage* contracts provided for a payment by the municipality of Anchorage to the government agency in exchange for the agency's "specialized technical expertise and input" and for a direct benefit for the government, namely, a service fee, enhancement of access to a nearby military base and areas and facilities for its use. *Anchorage*, 119 Fed. Cl. at 713-15. As this Court concluded in *Anchorage*, the agreements in that case went "well beyond transferring 'a thing of value' to a local government" and "the value that the Government was to receive [went] well beyond mere incidental benefit." *Anchorage*, Fed. Cl. at 713.

In addition, the Court notes that the Parish has not pointed to any specific provision in the agreement contemplating money damages for breach by the NRCS. To the contrary, the agreement provides that the Parish shall "hold and save NRCS free from any and all claims or action whatsoever resulting from the obligations undertaken by the Sponsor under this agreement or resulting from the work provided in this agreement." A4. In essence, the agreement language expressly bars exactly what the Parish is attempting to do in this action.

### b. The Cooperative Agreement Does Not Provide A Direct Benefit to the Government.

To establish an enforceable contract with the Government, the Parish must demonstrate: a mutual intent to contract, an exchange of consideration, lack of ambiguity in offer and acceptance, and actual authority on the part of the government representative to bind the government in contract. *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990). "In the context of government contracts . . . consideration must render a benefit to the government, and not merely a detriment to the contractor." *Metzger, Shadyac & Schwarz v. United States*, 12 Cl. Ct. 602, 605 (1987) (citations omitted).

Here, because the NRCS did not receive a direct benefit, the agreement is not an enforceable contract in this Court. Per the agreement, the Parish would carry out the necessary debris removal by contracting it out, and the NRCS would reimburse it for the actual costs. According to the Parish, the benefit flowing to the Government was the restoration of a natural resource and a reduction in the amount of emergency funds that the Government would spend in future flooding emergencies. Pl.'s Reply at 2-3. But this is not the kind of direct benefit that one sees in *Anchorage*, one that would support the finding of an exchange between the Parish and the Government. In *Anchorage*, in addition to money, the city received the expertise of a government agency, and the government received direct, tangible benefits—a service fee, a road, and facilities. Here, the Government receives a generalized benefit, a cleared waterway that would reduce the damage from future flooding. In *Anchorage* the government got a new and better port, but this would not have been enough to find an express contract. This kind of generalized benefit is the hallmark of a money grant from the government to a locality for a worthy project that would have an incidental benefit to the government. Furthermore, pursuing the Parish's argument to its logical conclusion, every cooperative agreement would become a contract since cooperative agreements often result in the government paying for some kind of beneficial improvement. The crucial distinction is between an *incidental* and a *direct* benefit.

The entire purpose of a cooperative agreement is to transfer a thing of value *to* the local government *from* the executive agency. 31 U.S.C. § 6305. This is exactly what the agreement did, it transferred money *from* the NRCS *to* the Parish for sediment removal. While debris removal is a worthy project, it cannot be construed as providing consideration (i.e.: a direct benefit) to the government in this context.

### IV.    Conclusion

For all the reasons stated above, the Court concludes that the agreement between the Parish and NRCS is a Cooperative Agreement. Accordingly, the Court holds that the agreement cannot be fairly interpreted as contemplating money damages, thus precluding the Court's jurisdiction under the Tucker Act. In addition, even if this Court construed the agreement to contemplate money damages, no direct benefit flowed to the Government, thus failing to establish the consideration necessary to form an enforceable contract against the NRCS. As this Court lacks jurisdiction, the summary judgment motions need not be addressed.

Therefore, the Court **GRANTS** the government's motion to dismiss for lack of jurisdiction. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Edward J. Damich
EDWARD J. DAMICH
Senior Judge